## MARSHALL et al. v. STATE ex rel. LANKFORD, State Bank Com'r, et al.

No. 7589—Opinion Filed June 27, 1916.

(158 Pac. 1166.)

### 1. Mortgages—Consideration—Sufficiency.

When a bank is insolvent and the bank commissioner has ordered, and its directors have made an assessment of 60 per cent. upon its capital stock, only a part of which has been paid, and the bank commissioner is in charge, with a view of closing and liquidating such bank, and a further assessment of 100 per cent. upon its capital stock has been or is about to be made, which assessment a part of the stockholders of such bank are unable to pay, and the directors of such bank, to prevent forced liquidation and to continue it in business, give security by way of note and mortgage for the payment of such assessment, held, a sufficient consideration.

### 2. Guaranty—Consideration—Sufficiency.

Where a guaranty is entered into at the same time with the original obligation or with the acceptance of the latter by the guarantee and forms with that obligation a part of the consideration to him, no other consideration need exist.

### 3. Banks and Banking—State Bank Officer —Authority.

Under the facts of this case, held, that the bank commissioner, under the provisions of section 306, Revised Laws 1910, had authority to accept, payable to himself, the note and mortgage sued upon.

(Syllabus by Edwards, C.)

Error from Superior Court, Muskogee County; H. C. Thurman, Judge.

Action by the State, on the relation of J. D. Lankford, State Bank Commissioner, and another against A. W. Marshall and another. Judgment for plaintiffs, and defendants bring error. Affirmed.

W. S. Brown, Jr, W. W. Noffsinger, and Y. P. Broome, for plaintiffs in error.

Irwin Donovan, for defendants in error.

Opinion by EDWARDS, C.    This action was commenced by the state of Oklahoma, on the relation of J. D. Lankford, state bank commissioner, against A. W. and S. E. Marshall, to recover judgment upon a promissory note and to foreclose a real estate mortgage securing the same, said note and mortgage bearing date, June 16, 1913, signed by the said A. W. and S. E. Marshall, and payable to J. D. Lankford, bank commissioner. The parties will be referred to as plaintiff and defendants, according to their position in the lower court. The defendants, A. W. and S. E. Marshall, are husband and wife, and the husband, A. W. Marshall, was at the time of the execution of the said note and mortgage, a stockholder and director of the People's Bank & Trust Company, of Muskogee.

The record discloses: That at the time of the execution and delivery of the said note and mortgage the said banking concern was in financial trouble, and was under investigation by the bank commissioner, who, a short time prior thereto, had ordered the said bank to make an assessment of 60 per cent. against its stockholders. That at or about the time of the giving of the said note and mortgage (the formal order being dated a few days later), a further order was made to the directors of said bank, directing the assessment of 100 per cent. additional against its stockholders. That at about the time of the execution of the note and mortgage several meetings were had between the assistant bank commissioner and the officers and persons interested in said bank. That on the 13th day of June there had been a run upon said bank, and at the time of closing on that date but $700 remained in its vaults, and the bank commissioner was unwilling that the bank should again open for business unless additional funds were provided and the assurance given that the assessment would be paid. That at a meeting at that time between the assistant bank commissioner and the stockholders of the bank, the commissioner insisted that the assessment of 100 per cent. then made or about to be made, together with a balance of about $6,000 on the prior or 60 per cent. assessment, be paid. He was at that time informed that some of the stockholders were unable to pay the assessment, and the directors proposed to give the commissioner security to guarantee the payment of the assessment within 60 days, which offer was accepted by the assistant commissioner, and pursuant to such agreement the note and mortgage were executed, payable to J. D. Lankford, state bank commissioner, and at or about the same time some money was procured so that the bank might resume business, and various notes and mortgages were given by other persons interested in said bank, sufficient to satisfy the bank commissioner, but this was not completed until the bank had remained closed for one business day. Upon its completion the bank resumed operations and continued for several months, but subsequently failed, and was liquidated by the banking department. After the failure of the bank its assets were taken over for the benefit of the state guaranty fund. The case was tried to a jury, and the verdict was for the plaintiff.

Two reasons are urged by defendants for reversal of the judgment, as follows: (1) There is no consideration to support the note and mortgage sued upon. (2) The state bank commissioner had no authority to accept in his official capacity the note and mortgage under the circumstances in this case. They will be considered in the order presented.

As to the first ground assigned, our statute (Revised Laws of 1910, sec. 926) defines a good consideration as follows:

"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other persons, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

This statute has been under consideration in the following cases: Doxy v. Exchange Bank of Perry, 19 Okla. 183, 92 Pac. 150; Fue v. People's Bank & Trust Co., 56 Okla. 738, 156 Pac. 683; State ex rel. Lankford, Bank Commissioner, v. Sollis (rehearing denied Dec. 19, 1917). 152 Pac. 1114.

It would seem to be self-evident that at the time of the execution of the note and mortgage in controversy, the defendant A. W. Marshall, who was a stockholder and director in the bank, was interested in its solvency and in continuing it in business and

in saving it from forced liquidation, and the carrying out of the plan then under discussion between the bank commissioner and the officers of said bank, by which the bank could continue in business, was some consideration for the execution of such note and mortgage. The further fact that at or about the same time the note and mortgage here in controversy were executed and delivered by these defendants other interested persons, as a part of the general plan of repairing the assets of the involved bank, gave notes and mortgages, and to that extent suffered a detriment, would likewise constitute some consideration for the execution of the said note and mortgage. The levying of the assessment of 100 per cent., and the taking of the note and mortgage from the defendants, and the notes and mortgages given by the other interested parties, is all a part of one continuous general transaction for the repairing of the assets of the insolvent bank, and as such falls within the provisions of section 1028, Revised Laws 1910:

"Where a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the guarantee, and forms, with that obligation, a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation."

We therefore conclude that there is a sufficient consideration to support the note and mortgage sued upon in this action.

We now consider the second ground assigned, that the bank commissioner had no authority to take commercial paper issued in his official name. It is a well-settled general proposition that the authority of state officers is only such as is conferred by law, and cannot be varied or enlarged by usage. 36 Cyc. 865. Our statute, with reference to the duties of the bank commissioner (section 306, Revised Laws of 1910), provides:

"After the bank commissioner shall have taken possession of any bank or trust company which is subject to the provisions of this chapter, the stockholders thereof may repair its credit, restore or substitute its reserves, and otherwise place it in condition so that it is qualified to do a general banking business as before it was taken possession of by the bank commissioner; but such bank shall not be permitted to reopen its business until the bank commissioner, after a careful investigation of its affairs, is of the opinion that its stockholders have complied with the laws, that the bank's credit and funds are in all respects repaired, and all advances, if any, made from the depositors' guaranty fund fully repaid, its reserve restored or sufficiently substituted, and that it should be permitted again to reopen for business: whereupon said bank commissioner is authorized to issue

written permission for reopening of said bank in the same manner as permission to do business is granted after the incorporation thereof, and thereupon said bank may be reopened to do a general banking business."

The bank commissioner must have some latitude in determining what will repair the credit of an insolvent bank. The mere levying of an assessment will not be sufficient. The law contemplates that the bank commissioner will permit the stockholders to take such steps as in his discretion will repair the bank's credit and restore it to solvency. Sixty days having been allowed for the payment of the assessments ordered by the bank commissioner, we believe it is within the reasonable meaning of section 306, supra, that the bank commissioner might take security for the payment of such assessment. Such a step would be in compliance with his statutory duty to see that the stockholders repair the credit of the bank, and if such security be not paid before the expiration of the time given for the payment of such assessment, if the conditions warrant, he may close the bank or realize upon the security for the benefit of the bank as his judgment may dictate. And, as this note and mortgage were given for the purpose of securing the assessment and repairing the credit of the bank, they became assets of the bank, and upon its subsequent failure and liquidation out of the state guaranty fund, the state guaranty fund had a first lien thereon.

Finding no error that would warrant a reversal, the case is affirmed.

By the Court: It is so ordered.