### NATIONAL SURETY CO. v. SAND SPRINGS STATE BANK.

No. 9272—Opinion Filed Nov. 12, 1918.

Rehearing Denied Jan. 21, 1919.

(177 Pac. 574.)

**1. Officers—Authority—Exercise.**

Public officers have only such authority as is conferred upon them by law, and such authority must be exercised in the manner prescribed by law.

**2. Banks and Banking—"Reorganization"—Sale of Assets.**

A state bank, being insolvent, was taken charge of by the Bank Commissioner. Thereupon some of the stockholders of the insolvent bank organized a new bank, received a new charter under a new name, and proceeded to do a banking business under license of the State Bank Commissioner. The State Bank Commissioner transferred to the new bank the assets of the insolvent bank. Held, that the transaction did not constitute a reorganization of the insolvent bank under section 306, Revised Laws 1910, but was an attempted sale of the assets of the insolvent bank to another banking corporation.

**3. Same—Power of State Banking Commissioner — Transfer of Assets of State Bank—Order of Court.**

The State Bank Commissioner has no power to sell and transfer the assets of a state bank taken over by him except upon an order of the district court or a judge thereof.

**4. Same—Transfer of Assets—Title of Purchaser—Right of Action.**

An attempt by the State Bank Commissioner to sell and transfer the assets of an insolvent bank, taken charge of by him, without an order of the district court or a judge thereof authorizing such sale, transfers no title to the assets so attempted to be sold and transferred to the purchaser, and such purchaser cannot maintain an action

upon a chose in action so attempted to be transferred.

(Syllabus by Rummons, C.)

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by Sand Springs State Bank against National Surety Company. Judgment for plaintiff, and defendant brings error. Reversed.

N. B. Maxey and Kelly Brown, for plaintiff in error.

Poe & Lundy, for defendant in error.

Opinion by RUMMONS, C. This is an action by the defendant in error against the plaintiff in error to recover upon a fidelity bond executed by the plaintiff in error to the Bank of Sand Springs guarantying the fidelity of Thomas W. Spillman, cashier of said Bank of Sand Springs. The parties will be designated herein as they appeared in the court below.

We need only consider one assignment of error presented by the defendant. Error is assigned in the overruling by the court of defendant's demurrer to the evidence on the ground that plaintiff failed to show a right to maintain this action. The Bank of Sand Springs, to which the bond sued upon was made, became insolvent in October, 1913, and the Bank Commissioner closed its doors and took charge of its assets. Thereupon the plaintiff, Sand Springs State Bank, was organized, its capital stock paid in by its stockholders, some of whom were stockholders in the defunct Bank of Sand Springs, and the Bank Commissioner, upon the agreement of the plaintiff to assume the liabilities of the Bank of Sand Springs, turned over to plaintiff the assets of the Bank of Sand Springs, and delivered to plaintiff the bond here in controversy.

The testimony of the Deputy Bank Commissioner, who took charge of the Bank of Sand Springs, as to the transfer is, in substance, as follows:

"I remained in charge of the bank as bank examiner, and the assets of the bank remained under my jurisdiction for three or four days, possibly a week. I turned over the assets October 13th to the reorganizers of the new bank. A new bank was reorganized there, giving them the entire assets of the Bank of Sand Springs, and they were to assume the liabilities of the same, and were to pay up new capital stock of $10,000. Charles Page, one of the stockholders of the old bank, put up this money. The assets of this bank were turned over to the Sand Springs State Bank by authority of the State Bank Commissioner, and I was at that time acting as Deputy Bank Commissioner. The bond on which suit is brought

was afterwards turned over to them, and the banking commission took a receipt from the Sand Springs State Bank, signed by Charles Page as president, for the bond in question. I did not make a written assignment or transfer of the assets."

Cross-examination:

"I reported to the Bank Commissioner that Mr. Page had deposited $10,000 to the credit of the Sand Springs State Bank. The depositors would have gotten their money from the guaranty fund if Mr. Page had not agreed to take over the assets of the bank and assume the liabilities."

"At the time Mr. Page deposited this $10,-000 he had not received his charter, and, as it was one of the requirements of law that the capital stock must be paid in before the charter is granted, I notified the Bank Commissioner by phone that the money had been paid in, and they gave him authority by wire to open, pending issuance and arrival of the charter."

"I turned over to them all the assets of the old bank, the charged off notes, and all assets of every description."

The testimony of Charles Page, a stockholder in the new banking institution, as to the transfer was, in substance, as follows:

"I was a stockholder, but not an officer, in the Bank of Sand Springs, and think I owned about $2,500 worth of stock. I put up $10,000 in order to reorganize it. The old bank was closed by the bank examiner."

"There was only one thing for me to do, as I remember, that was to reorganize it, take out a new charter, and he would turn over all these assets to me, together with the liabilities. I was to assume the liabilities, open the doors, and go at it again, which I did. I deposited $10,000, and got the charter, I think the next morning. I then met Mr. Tuttle, who went over the assets and turned them over to me. He afterwards turned the bond over to me. and I executed a receipt for it. The new bank opened for business with the same fixtures and in the same building that was formerly occupied by the Bank of Sand Springs."

The plaintiff offered in evidence a petition for an order to convey real estate filed in the district court of Tulsa county by J. D. Lankford, State Bank Commissioner, and an order of the district court made upon said petition authorizing and directing said Bank Commissioner to make a deed to said real estate. Pursuant to said order the Bank Commissioner executed a deed conveying to the plaintiff a lot in Sand Springs, Okla.

Section 304, Revised Laws 1910, is as follows:

"The Bank Commissioner shall take possession of the books, records, and assets of every description of such bank or trust company, collect debts, dues, and claims belong-ing to it, and upon order of the district court, or judge thereof, may sell or compound all bad or doubtful debts, and on like order may sell all the real or personal property of such bank or trust company upon such terms as the court or judge thereof may direct, and may, if necessary, pay the debts of such bank or trust company and inforce the liabilities of the stockholders, officers, and directors: Provided however, that bad or doubtful debts as used in this section shall not include the liability of stockholders, officers or directors."

It is contended on behalf of the defendant that the assets of the Bank of Sand Springs, including the bond here in controversy, were never legally transferred to the plaintiff; that the plaintiff never became the owner of the bond sued on; that the Bank of Sand Springs was still the obligee of said bond, and that the plaintiff could not maintain action thereon.

Public officers have only such authority as is conferred upon them by law, and such authority must be exercised in the manner prescribed by law. 36 Cyc. 865.

Section 304, Revised Laws 1910, supra, authorized the Bank Commissioner to take possession of the books, records, and assets of every description of an insolvent bank, to collect debts, dues, and claims belonging to it. This authority is conferred upon the bank commissioner, and may be exercised by him in his sound discretion, without supervision. But, when it comes to the disposition of the assets of an insolvent banking corporation, the authority of the Bank Commissioner is limited by this section of the statute. It is provided that, upon order of the district court or judge thereof, he may sell or compound all bad or doubtful debts, except the liabilities of the stockholders, officers, or directors, and upon like order he may sell all the real or personal property of such bank or trust company upon such terms as the court or judge thereof may direct. In the instant case the only assets of the Bank of Sand Springs transferred to the plaintiff in accordance with the authority conferred upon the bank Commissioner by the statute was the lot in Sand Springs.

It is contended by counsel for plaintiff that the order of the district court of Tulsa county, hereinbefore referred to, was an approval and ratification of the act of the Bank Commissioner selling the assets of the Bank of Sand Springs to the plaintiff, and that, while the proceedings may be irregular, they are not open to collateral attack, such as is made upon them by the defendant. We are unable to take this view of the proceedings taken by the Bank Commissioner in the district court of Tulsa county. The pe-

tition filed. by the Bank Commissioner recites the organization of the plaintiff, its being licensed to carry on a banking business, and the sale, conveyance, and delivery to the plaintiff of all the property of the defunct Bank of Sand Springs in consideration that the plaintiff would assume and pay in full all debts of the Bank of Sand Springs, and hold the State of Oklahoma and the guaranty fund of the state free from any liens or obligations of whatsoever character. The petition then recites that the plaintiff has complied with and fulfilled its obligation, and is entitled to have conveyed to it the title in fee simple to the property therein described together with the appurtenances thereunto belonging. The only property described in the petition is the lot in Sand Springs, being the banking house of the plaintiff, and the petition avers that no deed has ever been executed by the Bank Commissioner therefor. The petition closes with a prayer that the court make an order authorizing the Bank Commissioner for and on behalf of the state of Oklahoma, to execute a deed to the plaintiff conveying to the plaintiff the said lot above described, together with the appurtenances thereunto belonging. The order of the court made upon the petition, after reciting the facts set out in the petition. and describing the lot sought to be conveyed by the Bank Commissioner, orders that said Bank Commissioner be authorized to make, execute, and deliver. for and on behalf of the state of Oklahoma, a good and sufficient deed to the plaintiff, conveying all of said property as above described. The deed made pursuant to said order by the Bank Commissioner conveys to the plaintiff only the lot described in Sand Springs. It seems clear, therefore, that the only property which the Bank Commissioner sought authority to sell and convey. which the court ordered and directed him to sell and convey, and which was sold and conveyed pursuant to the authority granted in section 304, R. L. 1910. supra, was the lot in Sand Springs.

Since the bond sued upon, being a part of the assets of the Bank of Sand Springs. was never sold and transferred to the plaintiff by an order of the district court or a judge thereof, the objection made by the defendant to the right of the plaintiff to maintain this action is not a collateral attack upon an order or judgment of the district court, there being no order or judgment to attack.

It is contended by counsel for defendant that the transfer of the assets of the Bank of Sand Springs to the plaintiff was made under authority of section 306, R. L. 1910, which provides as follows:

"After the Bank Commissioner shall have taken possession of any bank or trust company which is subject to the provisions of this chapter, the stockholders thereof may repair its credit, restore or substitute its reserves, and otherwise place it in condition so that it is qualified to do a general banking business as before it was taken possession of by the Bank Commissioner; but such bank shall not be permitted to reopen its business until the Bank Commissioner, after a careful investigation of its affairs, is of the opinion that its stockholders have complied with the laws, that the bank's credit and funds are in all respects repaired, and all advances, if any, made from the depositors' guaranty fund fully repaid, its reserve restored or sufficiently substituted, and that it should be permitted again to reopen for business; whereupon said Bank Commissioner is authorized to issue written permission for reopening said bank in the same manner as permission to do business as granted after the incorporation thereof. and thereupon said bank may be reopened to do a general. banking business."

We are unable to take this view of the transaction. Section 306, supra, authorizes the Bank Commissioner to permit an insolvent bank to be reopened when the stockholders of such bank have repaired its losses, and when the impaired credit of the bank has been so restored as to place it in condition so that it is qualified to do a general banking business as before it was taken possession of by the Bank Commisioner. In the instant case the Bank of Sand Springs. so far as the record discloses, never reopened its doors. Instead, a new banking corporation was authorized, a new charter and new license to do business were issued to a new corporation, which was and is entirely distinct from the Bank of Sand Springs.

In Capitol State Bank of Oklahoma City v. Western Cas. & Guar. Ins. Co., 47 Okla. 549. 149 Pac. 149. Mr. Chief Justice Kane. who delivered the opinion of the court, says:

"The new institution, the Capitol. State Bank, was organized legally, we assume. by Bonner, Dennis, and associates, paying up a new capital stock of $10,000 in the new bank, whereupon the Bank Commissioner. pursuant to the agreement heretofore mentioned. issued a certificate permitting it to do a banking business under the laws of the state. From the facts before us we can come to no other conclusion than that the new bank was an entirely different institution from the old, and that the change that took place pursuant to the agreement with the Bank Commissioner entirely changed the legal entity of the new corporation. The old corporation, as we have seen, was insolvent beyond recovery. All its assets had been sold by the state, who had a preferred lien on them. for a sum barely sufficient to

pay the class of creditors, to wit, the general depositors, for whose benefit the lien was created."

The transaction in the case just cited was on all fours with the instant case, and, as said in that case, we can come to no other conclusion than that the plaintiff is an entirely different institution from the Bank of Sand Springs and an entirely different legal entity.

The transaction in the instant case was an attempt by the Bank Commissioner to sell, without authority of the district court or a judge thereof, the assets of the Bank of Sand Springs to another corporation, and the fact that the corporation to whom the assets were attempted to be transferred did business in the banking house of the Bank of Sand Springs did not constitute a reorganization, under the provisions of section 306, supra.

Counsel for plaintiff cite Capitol State Bank v. Western Casualty & Guaranty Co., supra, as authority for the proposition that the Bank Commissioner may sell the assets of a defunct bank without an order of the court. We think counsel has overlooked the language used by the court in touching upon the validity of the sale of the assets in that bank. The opinion says:

"As, in order to sustain plaintiff's theory, the plaintiff must concede that the action of the Bank Commissioner in winding up the affairs of the insolvent bank and disposing of its assets for the purpose of reimbursing the depositors' guaranty fund was valid, and that the agreement between the State Bank Commissioner and Bonner, Dennis, and associates and the organization of the new bank under this agreement were regular and in accordance with law, the court will so assume. Viewing the case from this standpoint, we find the entire assets of the hopelessly insolvent State Bank of Capitol Hill legally transferred to Bonner, Dennis, and associates by the State Bank Commissioner for a certain stipulated consideration in pursuance of a valid contract."

It is apparent from the language used that the court did not undertake to pass upon the validity of the sale of the assets of the bank in that case. It will be remembered that the question there arose upon the sustaining by the trial court of a demurrer to the answer of the defendant. As said by the court the plaintiff, in order to maintain its action against the defendants as a successor to the liabilities of the defunct bank, must assert that the transfer of the assets of defunct bank to another bank was legal and valid, and the court, for the purposes of this case, took that view of the transaction, but held

that the trial court committed error in sustaining the demurrer to the answer upon the assumption indulged in.

Counsel for plaintiff rely upon the case of Marshall v. State ex rel. Lankford, 59 Okla. 243, 158 Pac. 1166. That was an action to recover upon a note and mortgage given to cover assessments made to restore the impaired capital of a state bank which was permitted to reopen under the provisions of section 306. The note and mortgage were executed and made payable to the Bank Commissioner. The bank, after being permitted to reopen, finally failed. The only question determined by the court in that case is that the Bank Commissioner did not exceed his authority in taking the note and mortgage to secure the payment of the assessment made upon the stockholders in order to repair the losses of the bank. It was held that the note and mortgage became the assets of the bank, and upon its final failure passed into the hands of the Bank Commissioner, and that he was authorized to maintain an action thereon. It is apparent that the foregoing case has no application to the state of facts existing in the instant case.

Counsel for plaintiff also cite First State Bank v. Lee, 65 Okla. 280, 166 Pac. 186, L. R. A. 1918B, 609. The question determined in that case was whether or not the First State Bank was a reorganization of the former First State Bank, which had been taken charge of by the Bank Commissioner, or whether it was a new corporation, as was the case of Capitol State Bank v. Western Casualty & Guaranty Co., supra. The court held that the transaction constituted a reorganization, and that the First State Bank was the same legal entity as the First State Bank taken charge of by the Bank Commissioner. The case is therefore not in point for the contention here made. It can, however, give little comfort to the plaintiff. Mr. Commissioner Stewart, who wrote the opinion of the court, discusses the authority of the Bank Commissioner and repeatedly refers to the provisions of section 304, supra, that the Bank Commissioner may, under order of the court, dispose of the assets of the defunct bank. It is clear that the writer of that opinion took the view that the provisions of section 304, R. L. 1910, supra, gave the district court supervision over the power of the Bank Commissioner to dispose of the assets of banks taken over by him, and that such assets could only be sold and transferred by an order of the district court or a judge thereof.

In the case of Williamson-Halsell-Frazier Co. v. State, 68 Okla. 40, 171 Pac. 453, it is held:

"Where the Bank Commissioner took charge of an insolvent bank, and where, in winding up its affairs, he sold certain of its assets, it will be presumed, in the absence of an affirmative showing to the contrary, that he obtained authority for such sale from the district court or a judge thereof."

This was an action of mandamus to compel the respondent to transfer on its books certain shares of stock to the relator, who was in possession of the certificates for the shares. The burden was upon the respondent to show that relator had no title. There being no affirmative showing that the Bank Commissioner was not authorized to make sale of the stock to relator, the court indulged the presumption that the acts of a public officer are regular.

The question here presented has never been squarely passed upon by this court so far as we have been able to discover, nor have we been cited to any direct authority upon the proposition; but it is apparent from the language used by this court in the various cases, and from the facts of the various cases in which the power of the Bank Commissioner has been considered, that his authority is limited by the statutes, and that he has only such authority as is conferred upon him by law, and that such authority cannot be varied or enlarged by usage Marshall v. State ex rel. Lankford, supra.

We are convinced that the only authority, vested in the Bank Commissioner with reference to the assets of state banks taken over by him is to collect the debts and claims due the bank, and, if it becomes necessary to convert the assets and property, either real or personal, of such bank into money, that before the Bank Commissioner can legally sell the same and pass title thereto to the purchaser, an order of the district court or of a judge thereof directing and authorizing such sale must be made. In the instant case, no such order having been made, the title to the cause of action arising upon the bond sued on never passed to the plaintiff, and the plaintiff acquired no right of action against the defendant upon such bond.

The demurrer to the evidence should have been sustained. The judgment of the trial court should be reversed.

By the Court: It is so ordered.