STATE ex rel. MOTHERSEAD, Bank Com'r, v. CARSON.

No. 18270. Opinion Filed May 22, 1928.

Rehearing Denied July 17, 1928.

(Syllabus.)

1. **Banks and Banking—Failed State Banks —Statutory Requirement of Order of District Court for Sale of Bank Property not Applicable to Collection of Debt from Indorser of Note and Assignment to him of Judgment.**

That part of section 4167, C. O. S. 1921, which authorizes the State Bank Commissioner to compound doubtful debts or sell the property of a bank taken over by him only upon order of the district court or judge thereof does not apply and such order is unnecessary in a case where the full amount due on a note or judgment thereon is paid by an indorser on such note, and an assignment of such judgment is made by the Bank Commissioner to the wife of the indorser, the party paying, such transaction being a collection of a debt or claim due the bank rather than a sale of its property.

2. **Appeal and Error—Review—Dissolution of Attachment.**

Applications to dissolve attachments address themselves to the trial court alone, and this court will not undertake to weigh the evidence presented when there is testimony reasonably supporting the finding as made by the trial court.

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by the State of Oklahoma ex rel. O. B. Mothersead, Bank Commissioner, against John E. Carson, to recover on note. An attachment was issued and levy made on property of defendant, who filed motion to discharge the attachment, which motion was sustained, and plaintiff appealed. Affirmed.

Chastain & Harris, for plaintiff in error.

Raymond B. Everest and Clarence M. Mills, for defendant in error.

LEACH, C. John E. Carson sold and indorsed to the Night and Day Bank of Oklahoma City a note executed in his favor by James McMeachan and William L. Payne, dated June 1, 1911, for the sum of $3.110, due March 1, 1912. On June 7, 1911, the

Night and Day Bank was declared insolvent, and taken over by the State Bank Commissioner for the purpose of winding up its affairs. On September 28, 1926, this action was instituted in the district court of Oklahoma county by the state, on relation of the State Bank Commissioner, to recover from Carson the amount of the said note with interest and attorney's fees, it being alleged that the note is and was at all times since the bank's failure an asset of said bank; that plaintiff had a lien thereon to reimburse it for sums paid the depositors of the bank. An order of attachment was issued in the cause, and certain property of defendant, Carson, levied upon. The defendant filed his motion to discharge the attachment. The second, third and fourth grounds of the motion were: (2) That the alleged grounds set forth in the attachment affidavit are not true; (3) plaintiff is not the real party in interest; (4) that the defendant, who was in the position of a surety, has been discharged by the acts of the plaintiff, in support of which defendant submits affidavit exhibit A. The essential parts of the affidavit exhibit A referred to alleged in substance that defendant was not indebted to the plaintiff for the reason the plaintiff is no longer the owner and holder of the note sued upon, or any right thereunder; that the note had been reduced to judgment in the district court of Oklahoma county on December 17, 1912, in case No. 13075; that on February 18, 1913, plaintiff, in consideration of the whole sums due under said judgment, assigned the judgment to Rose L. Carson, who is the owner and holder thereof.

Upon a hearing on the motion, the court found in favor of the defendant, and entered judgment sustaining the motion to discharge the attachment, from which action plaintiff brings this appeal, and assigns seven grounds of error, the second and third thereof being:

(2) "That the order or judgment is not sustained by sufficient evidence."

(3) "That the order or judgment is contrary to law"

—and are sufficient to raise the issues presented.

The defendant in support of his motion testified in part that he indorsed and sold the note to the bank; that a suit was instituted by the Bank Commissioner on the note against the makers thereof, and judgment obtained, upon which an execution was issued, under which certain lands in Bryan county were levied upon and sold, title thereto being acquired by the state and later conveyed by deed of Bank Commissioner to him; that he paid Mr. Lankford, Bank Commissioner, for the deed and judgment, the face of the judgment; did not remember the amount, somewhere about $3,500 or $4,000; he paid the whole amount of the judgment, interest and cost; assignment of the judgment was made at the time the money was paid, deed afterwards; the transaction was had in Bank Commissioner's office; he represented his wife in the transaction. On cross-examination, he said he did not recollect whether payment was made by check or cash; it would be most natural to pay by check; did business at that time with two or three banks in Oklahoma City; named two of them; he had an attorney named Dodson who transacted his business for him; did not recollect being served with a summons, or being a party to that suit on the note; he made the payment in the Bank Commissioner's office to someone, and the assignment was turned over; had looked through his canceled checks and papers, but did not find any canceled check showing payment, only found the assignment.

R. C. Stewart, a witness, testified he had formerly been Assistant Bank Commissioner and acting secretary of the board; he identified his signature, and that of J. D. Lankford, Bank Commissioner, signed to and appearing on a written assignment of the judgment referred to; said he had no recollection of signing the instrument, or of the transaction; that it was the custom of the Banking Department to enter money received on a ledger under the failed bank.

Defendant introduced an assignment of the judgment referred to, the assignment being dated February 18, 1913, in favor of R. L. Carson, and referred to the style and number of the case, date of judgment, and recited a consideration of $1 and other consideration. Also introduced a certified copy of recorded deed signed and acknowledged by J. D. Lankford, Bank Commissioner, under date of July 7, 1913, in favor of J. E. Carson, and describing land in Bryan county.

In support of the attachment, plaintiff called C. F. Dyer, who testified, in part, in substance, that he recalled the case of Lankford, Bank Commissioner, v. McMeachan et al.; that he as attorney filed the case for plaintiff; did not sign praecipe for execution in the case, or authorize anyone to cause execution to issue; did not know one had been issued until that date; stated he had an interest in that judgment for his per-

centage attorneys' fees, no part of which he had received; he was unaware that the assignment had been given; he had handled a number of other cases for the state; that there was never a settlement by the Banking Department in any case he filed without first consulting him. In addition to such testimony there were introduced affidavits of two bank officers respecting the account of the defendant in such banks at the time of date of the assignment; also, the affidavit of an employee of the Banking Department stating she had had charge of the accounts of the guaranty fund since the year 1911; that such accounts were accurately kept; that they did not show any payment of any sum on account of payment of the McMeachan-Payne judgment; that she had charge of petitions to sell assets or compromise debts and judgments of failed banks, and found no petition or court order authorizing sale or transfer of the judgment in question; also an affidavit of the court clerk of Oklahoma county, stating he did not find in his office, at or since the date of assignment, any judgment authorizing the Bank Commissioner to assign the judgment in question; also certified copy from records of Banking Department of the account of collections and disbursements of the guaranty funds in the liquidation of the Night and Day Bank. There was also introduced in evidence the note sued upon.

While defendant's testimony in support of his motion is subject to criticism, in that he did not make it as clear as may be desired as to the exact manner and detail of the payment of the sum to the Bank Commissioner, yet his statement of the transaction is not improbable, and lack of details and further proof of payment might be excused partly by reason of the long period of time between the date of the alleged payment and date of giving testimony. He testified that he paid to the Bank Commissioner the entire amount of the judgment, interest and cost, and received the assignment of the judgment. In support of his testimony he produced the written assignment of the judgment which was signed by the Bank Commissioner and attested by the Secretary of the Banking Board; also, a certified copy of the recorded deed conveying to him certain lands sold under the judgment in question. The evidence on behalf of the plaintiff is sufficient to raise an issue of fact and cast some doubt as to the payment of the sum alleged to have been made by defendant, but the evidence of each of the parties is not conclusive or beyond dispute upon

the question raised. The trial court after hearing the evidence found generally in defendant's favor, and, as we view it, there is evidence in the record reasonably supporting the finding of the trial court.

Plaintiff, after referring to the provision of section 4167, C. O. S. 1921, which reads in part as follows:

"The Bank Commissioner shall take possession of the books, records, and assets of every description of such bank or trust company, collect debts, dues and claims belonging to it, and upon order of the district court, or judge thereof, may sell or compound all bad or doubtful debts, and on like order may sell all the real or personal property of such bank or trust company upon such terms as the court or judge thereof may direct. * * *"

—and the case of National Surety Co. v. Sand Spring Bank, 74 Okla. 176, 177 Pac. 574, says:

"The statute referred to and as adjudicated in the Sand Springs Case are the important and controlling rules in this litigation."

In the Sand Springs Case, supra, it appears the Bank Commissioner obtained a court order to sell and transfer certain real estate belonging to the insolvent bank, under which order he conveyed the real estate to a newly organized bank; the Bank Commissioner also surrendered to the new bank a certain bond held by and in favor of the insolvent bank, on which bond the newly organized bank filed suit, and it was held in that case that there was no reorganization of the insolvent bank, that the new bank was a separate corporation and without authority to sue on the bond because the Bank Commissioner was without authority to sell and transfer the bond sued upon, no order having been obtained from the district court or judge thereof to sell or transfer such bond.

It is argued by plaintiff in the instant case that, though even the money had been paid by the defendant, the transaction was in the nature of a sale and void, because not made under an order of the district court. It is plain from the provisions of section 4167, C. O. S. 1921, supra, and the rule announced in the Sand Springs Case, supra, that the Bank Commissioner has no power to sell and transfer the assets of a bank taken over by him except upon an order of the district court or judge thereof. It is equally clear upon the same authorities that the Bank Commissioner may collect

debts, dues, and claims of a bank taken over by him without a court order.

Assuming as true the statements of the defendant to the effect that he paid the Bank Commissioner the amounts due under the judgment, and the contention of plaintiff that no court order was obtained authorizing the assignment, did the transaction as related by defendant amount to a sale such as would come within the provision of section 4167, supra, and require an order of the district court or judge thereof? We think not. Defendant testified that the note in question was given as a bonus for a 99 year lease on property belonging to his wife; that he represented her in the transaction, and the record disclosed that the assignment of the judgment was taken in his wife's name. Defendant being an indorser on the note, had the right to pay the same, and be subrogated to the rights of the plaintiff therein. In 3 R. C. L., 1121, sec. 337, under the head of "Bills and Notes," "Payment by Indorser," it is said:

"* * * The indorser is entitled, at any time after it becomes due, to pay the amount to the legal holder, and at once proceed to enforce it against the maker. * * *" Allen v. Williams, 97 Cal. 403, 32 Pac. 441.

Even though defendant had not been acting on behalf of his wife, the mere taking of the assignment in her name would not conclusively show a sale of the judgment to her under the evidence. There was no compounding of a bad or doubtful debt as stated in the statute, such as would require an order of the district court. The transaction, as we view it, shows a collection by, or payment of, a debt or claim due the insolvent bank, rather than a sale of the property of the bank or a compounding of a bad or doubtful debt, and is therefore not in conflict with the statute or main case relied upon by the plaintiff.

Plaintiff introduced the certificate of the court clerk of Oklahoma county, which stated that the records of his office at and since the day of the assignment did not disclose or show any order on file authorizing the Bank Commissioner to sell or assign the particular judgment. There was also introduced the affidavit of a clerk in the Banking Department, stating the records of that office did not disclose any court order authorizing the sale or assignment of the particular judgment. Whether such showing is sufficient to overcome the presumption that the action of the Bank Commissioner was regular and within his authority, we

do not necessarily decide, but merely call attention to such evidence, and the case of Williamson-Halsell-Frazier Co. v. State, 68 Okla. 40, 171 Pac. 453, and the reasoning and authorities therein cited, wherein it was said in the syllabus of that case:

"Where the Bank Commissioner took charge of an insolvent bank, and where in winding up its affairs he sold certain of its assets, it will be presumed, in the absence of an affirmative showing to the contrary, that he obtained authority for such sale from the district court or judge thereof."

"Applications to dissolve attachment address themselves to the trial court alone, and this court will not undertake to weigh the evidence presented when there is testimony reasonably supporting the finding as made by the trial court." Antrim Lbr. Co. v. Hazel, 118 Okla. 71, 246 Pac. 476.

See, also, Mott v. Zimmerman, 100 Okla. 299, 229 Pac. 227.

From an examination of the record, we are of the opinion that the finding and judgment is reasonably supported by the evidence.

Finding no reversible error in the cause, the judgment of the trial court is affirmed.

BENNETT, REID, JEFFREY, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 743, §522; 3 R. C. L. p. 1121: 5 R. C. L. Supp. p. 217; 7 R. C. L. Supp. p. 114. (2) 4 C. J. p. 846, §2831.