**YEARGAIN et al. v. SHULL, Bank Com'r.**

No. 20510. Opinion Filed June 9, 1931.

C. W. King and Leon S. Hirsh, for plaintiffs in error.

M. B. Cope and E. S. Lowther, for defendant in error.

ANDREWS, J. This is an appeal from the judgment of the district court of Oklahoma county in favor of the defendant in error, defendant in the trial court and hereinafter referred to as defendant, and against the plaintiffs in error, plaintiffs in the trial court and hereinafter referred to as plaintiffs.

The litigation herein arose out of the

failure of the Fidelity Bank of Grove, Okla., which bank became insolvent, was taken over by the State Bank Commissioner, and is now in process of liquidation. The cause was submitted to the trial court on an agreed statement of facts.

The material facts are as follows: In the course of the liquidation of the bank the State Bank Commissioner petitioned the district court of Delaware county, that being the court having jurisdiction, to permit him to sell certain assets of the bank consisting of notes and judgments, and that court made an order authorizing him to advertise and sell the assets of the bank subject to the approval and confirmation of that court. Notices of sale at public auction to the highest bidder were published. Those notices contained a provision as follows:

"All prospective purchasers are hereby notified that the undersigned Bank Commissioner, his agents, or assistants, do not warrant or guarantee the correctness of the amount due or payments shown on the above listed assets, as set up in detail under separate exhibits listed herein, or the genuineness of the signatures on notes, or the delivery of any notes shown out for collection or warrant title to any real estate shown for sale, is conveying only such title thereto as he has as such Bank Commissioner under the Banking Laws of Oklahoma, and the purchaser at such sale will buy the assets listed herein with notice and at his own risk as to all matters set forth herein."

The list attached contained a statement of the names of the makers of the notes, the bank number thereof, the due date, the original amount, the payments thereon and the balance due thereon. The plaintiffs, after reading the notices, examined the notes and judgments and conducted an inquiry into the solvency of the debtors. After that inquiry they bid upon a part of the assets and were declared to be the highest bidders for a number of them. Among those purchased are some in which the debtors were solvent and some in which the debtors were insolvent. The sale was approved and confirmed by the district court of Delaware county. Thereafter they found that the notes of the solvent debtors had been paid to the agents of the State Bank Commissioner prior to the sale.

It is not claimed by the plaintiffs that the Bank Commissioner personally received the proceeds of the collections thereon, and it appears that those collections were made by the liquidating agent and attorney in the regular course of liquidation, without the knowledge of the defendant, prior to the sale of the assets, and that the proceeds thereof were deposited in designated banks by those officers and accounted for in reports made by them to the auditor of the State Banking Department. The original notes were not delivered to the debtors for the reason that they were in the hands of agents other than those to whom the payments were made. It is not here contended that there was any actual fraud on the part of the State Bank Commissioner, and the fraud charged herein is constructive fraud. The plaintiffs called upon the State Bank Commissioner to pay to them the money that had been received by his agents on the notes prior to the sale to the plaintiffs. The State Bank Commissioner refused to comply with the demand, and the plaintiffs then brought an action in the district court of Oklahoma county to recover a money judgment against the State Bank Commissioner for the amount paid by the debtors on the notes prior to the sale of the notes to the plaintiffs. Judgment was rendered in favor of the defendant, and the plaintiffs appealed to this court.

The contentions are stated by the plaintiffs to be as follows:

"We have consistently contended that the action of the Bank Commissioner, in selling notes which he, himself (not the failed bank), had already collected, constituted a fraud of the most reprehensible sort. And the Bank Commissioner, instead of denying the fraudulent effect of his transactions, admits them and seeks protection upon the technical ground that the district court of Oklahoma county had no jurisdiction in the action.

"It was the contention of the Bank Commissioner, in the trial court, that the sales of the bank assets were judicial sales, and, for that reason, the plaintiffs must seek their relief in the district courts of the counties where the banks were located."

The issues submitted, as agreed upon, are as follows:

"That the only questions to be determined in this controversy are: First, the jurisdiction of the court to grant relief; second, the measure of plaintiff's recovery if the court determines plaintiffs are entitled to relief."

The State Bank Commissioner acted under the authority of chapter 80, Session Laws of 1923-24, which was enacted pursuant to the provisions of section 1, art. 14, of the Constitution of Oklahoma, and which is a valid legislative enactment. Section 2 of that act provides in part that, upon taking possession of the property of any bank, the Bank Commissioner is authorized to collect money due it and do such other acts as are necessary to conserve its assets, and shall proceed to liquidate the affairs thereof, as there-

inafter provided. The Bank Commissioner is authorized to collect all debts due and claims belonging to it and, "upon the order of the district court of the county in which it is doing business, may sell or compound all bad or doubtful debts and, on like order, may sell all its real and personal property on such terms and at public or private sale, as the court shall direct."

The plaintiffs contend that the court has no power to approve or disapprove the sale or the terms thereof, which construction would defeat the purpose of the statute. In our opinion the court has much broader authority than that, and the power granted to the court by the act includes the power to refuse to confirm the sale of assets, if the judgment of the court is that the sale should not be confirmed. That power is clearly conferred by the various provisions of the act.

Section 4 thereof provides, among other things, that, upon taking possession of the property, the Bank Commissioner shall make an inventory of the assets in duplicate, one copy of which shall be filed in the office of the court clerk of the county in which the bank was doing business, and that the court clerk of that county shall give the case a number on the district court docket. Upon the expiration of the time fixed for the presentation of claims, the Bank Commissioner is required to make in duplicate a full and complete list of the claims presented, one of which shall be filed in the office of the court clerk of the county in which the bank is located. The compensation of liquidating agents and employees and all expenses of liquidation are subject to the approval of the district court or a judge thereof. Under section 5 of the act such dividends shall be made as may be directed by the district court or a judge thereof, objections to any claims not rejected by the Bank Commissioner may be presented to the district court or a judge thereof, and the court is authorized to make such order as is necessary in allowing or disallowing such claims. Under the provisions of section 7 of the act the Bank Commissioner, after having procured the authority so to do by the district court or a judge thereof, may pay off prior liens or claims. Under the provisions of section 8 of the act none of the assets of a failed bank shall be sold, except on the order of the district court, and notice must be given of the hearing of such application before the district court or a judge thereof.

From those provisions it is clear that the district court, a part of the judicial branch of the government, was, by the legislative department, given authority to supervise the action of the agents of the executive department. The sale in question could not have been made without the order of the district court and, in our opinion, the sale would have been of no effect without the approval and confirmation of the district court.

The purchaser acquired the thing he purchased upon the approval and confirmation of the sale, and he acquired that thing only. In determining what he purchased, reference must be made to the limitations and conditions contained in the notice of sale. The purchaser is bound thereby. In our opinion the district court acts as a court of equity in ordering, approving, and confirming a sale of the assets of a failed state bank, and having acquired jurisdiction in equity, it retains jurisdiction to grant complete relief in equity to any party affected by its order. Cobb v. Whitney, 124 Okla. 193, 255 Pac. 577; McKay v. Kelly, 130 Okla. 62, 264 Pac. 814; and Cook v. Warner, 41 Okla. 781, 140 Pac. 424. In the latter case this court held:

"A court of equity which has obtained jurisdiction of the controversy on any ground, or for any purpose, will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter, and to avoid multiplicity of suits."

Tht State Bank Commissioner has the money collected from the debtors of this bank on the notes thereafter sold to the plaintiffs and is reserving the same pending the determination of this litigation. The plaintiffs have an opportunity for ample relief at the hands of that court to be granted to them through the equitable power of that court in supervising the actions of the State Bank Commissioner in the liquidation of the failed bank. In our opinion the district court of Delaware county has complete jurisdiction to adjust the equities between the parties and protect the rights of the plaintiffs.

It is not necessary for this court to here determine whether the sale in question was or was not a judicial sale. We decline to determine that question.

The State Bank Commissioner stands in the shoes of an insolvent bank and he must administer the same under the direction and control of the court having jurisdiction as if he were appointed as receiver upon original proceedings therefor and as directed by law. Van Meter v. State ex rel. Mothersead, 132 Okla. 230, 270 Pac. 41. If it becomes necessary for him to convert the bank property, either real or personal, into money,

he can legally sell the same and pass title thereto to the purchaser, but only on an order of the district court or a judge thereof and subject to the approval thereof. National Surety Co. v. Sand Springs Bank, 74 Okla. 176, 177 Pac. 574. See, also, State ex rel. Mothersead v. Carson, 131 Okla. 289, 269 Pac. 292.

Public officers have only such authority as is conferred upon them by law. National Surety Co. v. Sand Springs Bank, supra. That rule is elemental. Before an executive officer of the state shall be liable to a personal judgment for failure to disburse funds in his hands as an officer of the state, some specific statutory provision for its disbursement must be shown. The facts here show that the State Bank Commissioner collected money owing to the failed bank from one of its debtors. Upon receipt of that money he held the same for the benefit of the creditors, depositors, and stockholders of the bank. He had no authority of law to sell that money. He now has that money and he is asked to deliver it to the plaintiffs because the plaintiffs purchased the notes evidencing the indebtedness which had theretofore been collected by the State Bank Commissioner, and upon his refusal so to do, he is sued in an action to recover the amount of money so collected by him. No statutory authority is cited and we know of none requiring him to turn over cash assets of that bank to the purchasers of notes because the notes purchased had been paid to the Bank Commissioner prior to the time of the purchase. In the absence of statutory authority to that effect, judgment therefor could not be sustained. The consideration for the sale failed by reason of the notes sold having been paid prior to the sale, and equity will protect a purchaser from loss sustained thereby.

We are not here determining that the State Bank Commissioner would not be liable in an action at law for a fraudulent act in inducing a purchaser to purchase notes of a failed bank that had been paid. Such an action could be maintained against him, if at all, only in his individual capacity. There is no question of fraud sufficient to maintain such an action presented by this record, and the State Bank Commissioner here is sued in his official capacity and not as an individual. The State Bank Commissioner is an executive officer of the state of Oklahoma and as such may not be sued in a court of law and a judgment rendered against him which will in anywise affect the assets of a failed state bank in his hands as such Bank Commissioner. The district court of Oklahoma county has no jurisdiction to render any such judgment against him, and its action in refusing to do so is affirmed.

CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and HEFNER, J., absent.